**WARD, KEENAN & BARRETT, P.C.**
Gerald Barrett, SBN: 005855
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Tel: (602) 279-1717
Fax: (602) 279-8908
E-Mail: gbarrett@wardkeenanbarrett.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant*
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Alec M. Leslie*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
           aleslie@bursor.com
           mroberts@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Davis, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HDR, Inc., | |
| Defendant. | |

Plaintiff Carol Davis ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant HDR, Inc. ("HDR" or "Defendant") for wiretapping the electronic communications of members of the following private Facebook groups (the "Group Members"): Ahwatukee411 and Protecting Arizona's Resources & Children (PARC) ("PARC") (collectively, the "Private Facebook Groups").  The wiretaps are used by Defendant to secretly observe and monitor Group Members' electronic communications and confidential postings in the Private Facebook Groups, through the use of monitoring tools, automated software, and dedicated employees with backgrounds in signals intelligence and communications intelligence.  As such, Defendant has violated the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq*., violated the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, and violated the Group Members' common law right to privacy.

2.      Plaintiff Davis is a member of the Private Facebook Groups, Ahwatukee411 and PARC.  Plaintiff Davis communicated with other Group Members in the Private Facebook Groups, and her communications were monitored, captured, and analyzed by Defendant.  Defendant HDR is a multi-billion-dollar architecture and design firm that has designed over 275 jails and prisons, and also offers various covert surveillance services.  Defendant monitored the Private Facebook Groups secretly and without consent, and gathered information about discussions in the groups in order to inform Defendant's and its client's marketing strategies.

3.      Defendant conducted this monitoring by hiring employees and investigators with backgrounds in intelligence, particularly geospatial and

information management, and strategic communications.  These employees, operating as part of Defendant's "STRATA" team, deployed automated tools and monitoring software and otherwise infiltrated the Private Facebook Groups on behalf of HDR.

4.     Plaintiff brings this action on behalf of herself and a class of all persons whose electronic communications in the Private Facebook groups were secretly monitored and by Defendant's wiretaps.

**THE PARTIES**

5.     Plaintiff Carol Davis is a citizen of Arizona who resides in Phoenix, Arizona with an intent to remain there.  Plaintiff Davis has been a member of the Private Facebook Group, Ahwatukee411, since approximately 2015.  Since 2015, and prior to the filing of this lawsuit, Plaintiff Davis posted in the Ahwatukee411 Private Facebook Group and communicated with other Group Members.  Plaintiff Davis's posts discuss topics such as recommendations for services and debates involving local issues, such as the construction of a local highway and potential political corruption.  Plaintiff Davis regularly posts in the Ahwatukee411 Facebook group approximately two to three times a week, and her most recent post was in October 2021.  Plaintiff Davis was in Phoenix, Arizona when she accessed and posted in the Ahwatukee411 Private Facebook Group.  Since at least 2016, if not earlier, Plaintiff Davis's private electronic communications with other Group Members, including her communications regarding recommendations for services and debates involving local issues, were monitored, read, disclosed, intercepted in real-time, and otherwise wiretapped and/or accessed in electronic storage by HDR.  Plaintiff Davis was unaware at the time that her electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to HDR, nor did Plaintiff Davis consent to the same.

6.     Plaintiff Davis has also been a member of the Private Facebook Group, PARC, since approximately 2016.  Since 2016, and prior to the filing of this lawsuit,

1   Plaintiff Davis posted in the PARC Private Facebook Group and communicated with

2   other Group Members.  Plaintiff Davis's posts discussed topics such as debates over

3   the construction of a local highway and its environmental impact.  Plaintiff Davis

4   often posts in the PARC Facebook group, and her most recent post was in

5   approximately August 2021.  Plaintiff Davis was in Phoenix, Arizona when she

6   accessed and posted in the PARC Private Facebook Group.  Since at least 2016, if not

7   earlier, Plaintiff Davis's private electronic communications with other Group

8   Members, including her communications regarding debates involving local issues,

9   were monitored, read, disclosed, intercepted in real time, and otherwise wiretapped

10  and/or accessed in electronic storage by HDR.  Plaintiff Davis was unaware at the

11  time that her electronic communications, including the information described above,

12  were being intercepted in real-time and would be disclosed to HDR, nor did Plaintiff

13  Davis consent to the same.

14          7.      Defendant HDR, Inc. is a Delaware Corporation with its principal place

15  of business at 1917 S. 67th Street, Omaha, Nebraska 68106.

16          8.      HDR does business throughout Arizona and the entire United States.

17  HDR contracts with numerous clients, including the Arizona-based clients that

18  authorized the conduct here.

19                          **JURISDICTION AND VENUE**

20          9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.

21  § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all

22  members of the proposed class are in excess of $5,000,000.00, exclusive of interest

23  and costs, and at least one member of the proposed class is a citizen of a state

24  different from Defendant.

25          10.     This Court has personal jurisdiction over Defendant because Defendant

26  has purposefully availed itself of the laws and benefits of doing business in this State,

27  and Plaintiff's claims arise out of Defendant's forum-related activities.  Furthermore,

28

1    a substantial portion of the events giving rise to Plaintiff's claims occurred in this

2    District.

3          11.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this

4    action because a substantial part of the events, omissions, and acts giving rise to the

5    claims herein occurred in this District.

6    <center>**STATEMENT OF FACTS**</center>

7    **I.    Overview Of The Wiretaps**

8         **A.    Defendant's STRATA Social Medial Listening Service**

9          12.    HDR is a multi-billion-dollar architecture and design firm that has

10   designed over 275 jails and prisons.

11         13.    In addition to its architectural services, HDR also offers a number of

12   other services to its clients.  One of HDR's services is its "Strategic

13   Communications" team, which "works to help our clients manage the social and

14   political risk associated with infrastructure development ….  Our teams leverage web,

15   video and social networking and are experienced with wide-scale media campaigns

16   that include targeted digital, print, television and radio material."

17         14.    Another service offered by HDR is its Geospatial and Information

18   Management team, which "secur[es], organiz[es] and present[s] digital information

19   for easier access and informed decision-making.  We collaborate with clients to

20   automate workflows, connect systems, create reports and, ultimately, increase

21   productivity."

22         15.    HDR's "Strategic Communications" and "Geospatial and Information

23   Management" teams "jointly execute" another service offered by HDR, its

24   "STRATA" service.

25         16.    STRATA is a surveillance or "social listening" service that "uses data to

26   inform and enhance [HDR's] approach to public understanding.  Our STRATA team

27   practices data-driven engagement beyond standard demographics, and tailors public

28   involvement and decision-making approaches specifically for every project."

<center>4</center>

17.     As HDR formerly advertised on its website,[1] the goal of the STRATA service "is to gauge and mitigate social and political risks before they affect a project …. To be candid, STRATA exposes the truth of the human experience through comprehensive analysis from a technical and empathic lens."

18.     In order to achieve these objectives, the STRATA service:

> [L]everage[s] commercial off-the-shelf tools to develop powerful applications for communication strategies and issues mapping. **These tools enable us to extract, analyze and present demographics, lifestyle patterns and behaviors, and market potential indices to better understand the overall community.** We can quickly generate reports, interactive maps, dashboards and infographics to create powerful visual profiles and to assess potential social and political risks.

19.     The effect of this monitoring, Defendant claims, is saving its clients money: "Controversy is costly, both in reputation and in dollars. Social and political risk deserves attention at the planning stage of a project or program, where it can be carefully assessed and when there is time to develop strategies to mitigate or diminish risk." Such activity is known as "corporate counterinsurgency."

20.     According to John Stauber, an author and expert on industry manipulation, the purpose of HDR's surveillance is to "survey[] and evaluat[e] public opinion, the leadership of potential opposition groups, and citizen activists who seek to change, delay or halt a multi-million dollar project."

21.     Defendant states that the STRATA team can deliver "insights" in various forms: "Deliverables range from Excel reports to comprehensive web-based maps. Example datasets include project data, community profiles, poverty/income, education, employment, business summaries, race, language, digital usage and at-risk communities."

---

[1] HDR removed references to its STRATA service from its website in or about August 2021, after reporting by the publication *Vice* exposed HDR's illegal wiretapping.

22.     Below is an example of a "comprehensive web-based map" that the STRATA team can generate.  The map shows the location of a poster on a social media website, the content of a post, the post's author, the date and time of a post, and the "sentiment" of a post:



23.     In short, Defendant claims that the "STRATA team can provide **24/7 listening on social media platforms** and use sentiment analysis to determine trends, specify key influencers and identify or mitigate risk.  Social media listening allows us to track project success by measuring the effectiveness of messaging and communication.  Through social media listening, we can answer the following questions throughout the life of any project:

- Who are we reaching?
- What are they saying?
- Where are they?
- What are we missing?"

**B.     Defendant Infiltrates The Private Facebook Groups**

24.     In approximately December 2014, the Ahwatukee411 Private Facebook Group was formed.  Ahwatukee411 is a closed Facebook group that enables local

residents of the Ahwatukee Foothills area to privately discuss issues concerning the community.  The Ahwatukee411 group has approximately 32,400 members.

25.    The Ahwatukee411 Private Facebook Group has always been private. In order to join the group, prospective group members are required to fill out a questionnaire discussing their involvement in the Ahwatukee community and their interest in joining the group as it relates to the community.  This process is intended to ensure that only residents (*i.e.*, those with a vested interest in the Ahwatukee community) can join the group and are able to see other posts.

26.    In approximately 2016, the Protecting Arizona's Resources & Children (PARC) Private Facebook Group was formed (although the PARC organization itself has been around since 1995).  The PARC Private Facebook Group was formed to protest the construction of a highway that cuts through the Moahdak Do'ag Mountain (South Mountain), which is sacred to the local Native American community in Phoenix.  The PARC Private Facebook Group enables its members to privately discuss local issues.  The PARC group has roughly 930 members.

27.    The PARC Private Facebook Group has always been private.  In order to join the group, prospective group members are required to undergo a screening process.  This process is intended to ensure that largely only residents (*i.e.*, those whose homes would be affected by the construction of the local highway) can join the group and are able to see other posts.

28.    The idea of the Private Facebook Groups is that they are private and only populated with Ahwatukee local PARC members, not other persons, and certainly not employees or personnel of Defendant.  Indeed, the PARC Private Facebook Group is run by persons who oppose Defendant's interests/projects and the interests/projects of Defendant's clients.

29.    Unbeknownst to the Group Members, however, since at least 2016—and going back months if not years earlier—HDR has privately and without consent infiltrated, monitored, wiretapped, and/or accessed posts in the Private Facebook

Groups.[2]

30.     It is unknown how Defendant infiltrated these Private Facebook Groups—whether through the use of fake social media profiles or some other method.  What is known is that, again, neither Defendant nor its employees should have had access to the Private Facebook Groups, nor did the Group Members know Defendant had infiltrated the Private Facebook Groups nor consent to Defendant wiretapping their conversations.

31.     Once Defendant infiltrated the Private Facebook Groups, it "generated an 'influencer' report, an analysis of public sentiment on social media platforms, and a geospatial analysis that placed communities into categories such as 'ethnic enclaves,' 'barrios urbanos,' 'scholars and patriots,' and 'American dreamers.'"  The analysis also involving reading and analyzing the content of the posts in the Private Facebook Group for use in the "comprehensive web-based map" described above.

32.     Defendant monitored and/or intercepted posts in the Private Facebook Groups in real time, and/or accessed the contents of the posts in the Private Facebook Groups in electronic storage.

33.     Notably, Defendant's practices also violate Facebook's Terms of Service, which state users "may not access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access."

34.     These processes, as currently employed by HDR, function as a wiretap, as well as the acquisition of electronic communications in electronic storage.

## II.     Defendant Wiretapped Plaintiff's Electronic Communications

35.     Since approximately 2015, Plaintiff has been a member of the Ahwatukee411 Private Facebook Group.

---

[2] Ella Fassler, *A Company That Designs Jails is Spying On Activists Who Oppose Them*, VICE, Aug. 17, 2021, https://www.vice.com/en/article/93ym4z/a-company-that-designs-jails-is-spying-on-activists-who-oppose-them.

36.     Plaintiff privately communicated with other Group Members in the Ahwatukee411 Private Facebook Group.  Plaintiff communicated about topics such as recommendations for services and debates over local issues, including the construction of a local highway and potential political corruption.

37.     Likewise, since approximately 2016, Plaintiff has been a member of the PARC Private Facebook Group.

38.     Plaintiff also privately communicated with other Group Members in the PARC Private Facebook Group.  Plaintiff communicated about topics such as debates over the construction of a local highway and its environmental impact.

39.     To join both groups, Plaintiff went through a questionnaire and screening process to ensure she was an Ahwatukee resident and her interests were aligned with the PARC organization's goals.

40.     In both the Ahwatukee411 and PARC Private Facebook Groups, Plaintiff believed she was only communicating with other Ahwatukee residents or members of the PARC organization.  Plaintiff did not believe, nor did Plaintiff know or have reason to know, that her communications were being surveilled by unconsented-to third-party actors who were neither Ahwatukee residents nor persons whose interests were not aligned with the PARC organization's goals, and certainly not corporations antagonistic to the interests of the Private Facebook Groups.

41.     Since at least 2016, Plaintiff's private posts were tracked, read, intercepted, analyzed, and otherwise wiretapped and/or accessed in electronic storage by Defendant in real time using the aforementioned processes, and without Plaintiff's consent.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff seeks to represent a class of all members of the Private Facebook Groups whose electronic communications were intercepted by Defendant (the "Class").  Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

43.    Plaintiff also seeks to represent a subclass of all Class members in the State of Arizona who were members of the Private Facebook Groups, and whose electronic communications were intercepted by Defendant (the "Arizona Subclass"). Plaintiff reserves the right to modify the subclass definition as appropriate based on further investigation and discovery obtained in the case.

44.    The Class and Arizona Subclass shall collectively be referred to as the "Classes."

45.    Members of the Classes are so numerous that their individual joinder herein is impracticable.  Specifically, there are over 33,000 members of the Private Facebook Groups.  Members of the Classes may be notified of the pendency of this action by mail, publication through the distribution records of Defendant, and via Facebook.

46.    Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Common legal and factual questions include, but are not limited to, whether Defendant has violated the Federal Wiretap Act, violated the Stored Communication Act, and violated the common law right to privacy of Plaintiff and members of the Classes.

47.    The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other class members, was a member of both Private Facebook Groups and had her electronic communications intercepted and/or accessed in electronic storage and disclosed to Defendant through the use of Defendant's wiretaps.

48.    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

49.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Interception And Disclosure Of Electronic Communications**
**In Violation Of The Federal Wiretap Act,**
**18 U.S.C. § 2511**

50.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

52.     As alleged herein, Defendant intentionally intercepted the electronic communications of Plaintiff and the proposed Classes.

53.     Each of Defendant's wiretaps, automatic monitoring tools, processes, and software described herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5) and is primarily used for the purpose of the surreptitious interception of electronic communications.

54.     Upon information and belief, Defendant intercepts the electronic communications contemporaneously as they are sent.

55.     Upon information and belief, Defendant receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C §§ 2510, *et seq.*

56.     Defendant's interception and internment of electronic communications sent between Plaintiff and members of the Classes is intentional, as alleged herein.

57.     Plaintiff and members of the Classes did not consent to any of Defendant's actions in implementing wiretaps.

58.     Defendant was not a party to any of these electronic communications.

59.     Defendant's conduct violated 18 U.S.C. § 2511 and therefore gives rise to a claim under 18 U.S.C. § 2520.

60.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

## COUNT II

### Manufacture, Distribution, Possession, And Advertising Of An Electronic Communication Interception Device In Violation Of The Federal Wiretap Act, 18 U.S.C. § 2512

61.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.      Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

63.     18 U.S.C. § 2512, in pertinent part, holds "any person" liable "who intentionally:"

> [M]anufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or

will be sent through the mail or transported in interstate or foreign commerce.

18 U.S.C. § 2512(1)(b).

64.     Each of Defendant's wiretaps, including the automatic monitoring tools and software described herein, are an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and are primarily useful for the purpose of the surreptitious interception of electronic communications.

65.     At all relevant times, by using automatic monitoring tools, software, and other processes and means employed by the STRATA team, Defendant intentionally manufactured, assembled, and/or possessed a device that is primarily useful for the purpose of surreptitious interception of electronic communications.

66.     Defendant knew or had reason to know that its automatic monitoring tools, software, and other processes and means employed by the STRATA team—which were transported through interstate commerce over the Internet—were primarily useful for the purpose of wiretapping electronic communications.

67.     Plaintiff and members of the Classes did not consent to any of Defendant's actions in implementing wiretaps.

68.     Defendant was not a party to any of these electronic communications.

69.     Defendant's conduct violated 18 U.S.C. § 2512 and therefore gives rise to a claim under 18 U.S.C. § 2520.

70.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

## COUNT III
### Violation Of The Stored Communications Act,
### 18 U.S.C. §§ 2701, *et seq.*

71.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

72.     Plaintiff brings this claim individually and on behalf of the members of

the proposed Classes against Defendant.

73.    The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq*., prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided … and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage."  18 U.S.C. § 2701(a)(1).

74.    The posts in the Private Facebook Groups are "electronic communications" delivered through an "electronic communications service" as defined in 18 U.S.C. § 2510(15).

75.    At the time Plaintiff and the Classes' electronic communications were accessed without authorization on Facebook, the data was in "electronic storage" as required by the SCA.  18 U.S.C. § 2510(17).

76.    At all relevant times, Defendant intentionally accessed the contents of Plaintiff's and members of the Classes' posts in the Private Facebook Groups, and thereby obtained the contents of posts in the Private Facebook Groups while the contents were in storage.

77.    At all relevant times, Defendant acted without authorization.

78.    Defendant was not a party to any of these electronic communications.

79.    Plaintiff and members of the Classes are permitted to bring a civil action over these violations of the SCA.  18 U.S.C. § 2707(a).

80.    Plaintiff and members of the Class seek all relief available under the SCA, including damages suffered by Plaintiff and members of the Classes for not less than $1,000, and punitive damages.  18 U.S.C. § 2707(c).

## COUNT IV
### Common Law Invasion Of Privacy/Intrusion

81.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

83.     Plaintiff and members Classes have an interest in: (1) precluding the dissemination and/or misuse of their private posts in the Private Facebook Groups; and (2) being able to discuss local issues without observation, intrusion or interference, including, but not limited to, the right to join the Private Facebook Groups and interact with other Group Members without being subjected to wiretaps without Plaintiff's and members of the Classes' knowledge or consent.

84.     As alleged above, Defendant intentionally intruded into conversations in which Plaintiff and members of the Classes had reasonable expectations of privacy. That intrusion occurred in a manner that was highly offensive to a reasonable person.

85.     Defendant gained unwanted access to data by electronic and covert means, in violation of the law and social norms.

86.     At all relevant times, through the wiretapping of the Private Facebook Groups, Defendant intentionally invaded Plaintiff's and members of the Classes' common law privacy rights.

87.     Plaintiff and members of the Classes had a reasonable expectation that their posts in the Private Facebook Groups and would remain confidential and that Defendant would not infiltrate those groups and wiretap them.  Indeed, such activity is expressly prohibited by Facebook's Terms of Use.

88.     Plaintiff and members of the Classes did not consent to Defendant's wiretapping.

89.     This invasion of privacy is serious in nature, scope and impact.

90.     The invasion of privacy is sufficient to confer Article III standing.

91.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

92.     Plaintiff and members of the Classes seek all relief available for common law invasion of privacy claims under the law.

15

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:  November 10, 2021          Respectfully submitted,

**WARD, KEENAN & BARRETT, P.C.**

By:  */s/ Gerald Barrett*
          Gerald Barrett

Gerald Barrett, SBN: 005855
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Tel: (602) 279-1717
Fax: (602) 279-8908

16

E-Mail: gbarrett@wardkeenanbarrett.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant*
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Alec M. Leslie*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
          aleslie@bursor.com
          mroberts@bursor.com

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiff*

17